**Opinion issued December 18, 2018**



**In The**

# Court of Appeals

**For The**

# First District of Texas

————————————

**NO. 01-18-00564-CV**

————————————

**IN THE INTEREST OF N.J.H., A CHILD**

---

**On Appeal from the 314th District Court**
**Harris County, Texas**
**Trial Court Case No. 2017-03606J**

---

**MEMORANDUM OPINION**

The Court withdraws its opinion of November 20, 2018, vacates its judgment of the same date, and issues this opinion and judgment in their stead.

In this accelerated appeal, appellant, E.D.B. ("Father"), challenges the trial court's final decree, entered after a bench trial, terminating his parental rights to his minor child, N.J.H. In three issues, Father contends that the evidence is legally and factually insufficient to support the trial court's findings (1) that he knowingly

engaged in conduct, or knowingly placed the child with persons who engaged in conduct, that endangered the child's physical or emotional well-being,[1] (2) that he abandoned the child's mother during pregnancy,[2] and (3) that termination of his parental rights is in the best interest of the child.[3]

We affirm.

## Background

In June 2017, the Department of Family and Protective Services ("DFPS") filed a petition for the protection of N.J.H. and his sister. DFPS sought managing conservatorship and termination of the parental rights of the children's mother and alleged fathers. The DFPS investigator's affidavit states:

> On June 28, 2017 the agency received a referral alleging physical abuse of 8 month old [N.J.H.] . . . by an Unknown Perpetrator. The report stated [N.J.H.'s] mother . . . took [N.J.H.] to Texas Children's Hospital after being contacted by [N.J.H.'s] daycare regarding fever and swollen left leg. Report states medical exams discovered multiple fractures all over [N.J.H.'s] body in different stages of healing. The report describes [N.J.H.] as non-ambulatory and was observed not to sit up, which appeared to be unusual for [N.J.H.'s] age. The report states [mother] disclosed two months ago her oldest child, [two-year-old sister] . . . and [N.J.H.] were sleeping in her bed. [Mother] reported leaving the room for two minutes and upon returning to the room, found [sister] to be jumping on the bed. [Mother] reported [sister] falling onto [N.J.H.] when she was told to sit down, [mother] reported taking [N.J.H.] to a hospital for X-Rays which did not show any fractures. According to the

---

[1]    *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E).

[2]    *See id.* § 161.001(b)(1)(H).

[3]    *See id.* § 161.001(b)(2).

report, medical professionals state [N.J.H.'s] injuries are inconsistent with [mother's] explanation.

. . . .

[Mother] stated when [N.J.H.] was born she was in jail. . . . [Mother] stated his father is [M.H.] . . . . [Mother] stated all she knows is a friend told her he robbed someone and ended up shooting the man so he is in jail for attempted murder. . . .

. . . .

There is an immediate concern for [N.J.H.], infant, because of the extensive injuries that he has sustained, [mother] is unable to provide an explanation consistent with [N.J.H.'s] injuries. [Mother] is currently on probation for Aggravated Assault with a Deadly Weapon. Viable relative or fictive kin placements could not be located and attempts to make contact with options provided by [mother] were unsuccessful. [N.J.H.] has been found to have over fifteen fractures in various stages of healing, [N.J.H.] has fractures to all extremities . . . . Medical professionals concluded injuries are not consistent with [mother's] story and are consistent with child abuse. . . . [Mother has] a history of domestic violence. [M.H.] is incarcerated for aggravated robbery.

The trial court found that there existed a continuing danger to the physical health and safety of N.J.H. and his sister, and it entered an emergency order for their protection. After a hearing, the trial court issued a temporary order, appointing DFPS the managing conservator of the children. The mother filed an affidavit relinquishing her parental rights to the children and is not a party to this appeal. After DNA testing eliminated M.H. as N.J.H.'s father, the mother identified Father. This appeal solely concerns N.J.H. and Father.

On October 13, 2017, DFPS filed an amended petition, seeking to establish Father's paternity of N.J.H. In November 2017, after Father submitted to DNA testing, the trial court issued an order establishing Father's paternity of N.J.H.

On November 9, 2017, the trial court ordered that Father submit to drug testing, and the results were positive for cocaine and marijuana. On February 15, 2018, the trial court again ordered that Father submit to drug testing, and the result was positive for marijuana.

In April 2018, DFPS filed an amended Petition, seeking to terminate Father's parental rights with respect to N.J.H. on the grounds that Father had engaged in conduct, or knowingly placed N.J.H. with persons who had engaged in conduct, that endangered N.J.H's physical or emotional well-being[4] and that Father had voluntarily and knowingly abandoned N.J.H.'s mother, beginning at a time during pregnancy and continuing through the birth, failed to provide her with adequate support, and remained apart from N.J.H. or failed to support him since his birth.[5]

At trial, Felicia Huitt, a DFPS caseworker, testified that N.J.H., who was born in 2016, came into DFPS care due to physical abuse by his mother. He was eight months old at the time and had fifteen fractures in different stages of healing all over his body. Initially, mother identified another man, M.H., as N.J.H.'s father. After

---

[4]     *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E).

[5]     *See id.* § 161.001(b)(1)(H).

M.H. was excluded as N.J.H.'s father, the mother named Father as a possible father. Huitt noted that the mother stated that she did not think that Father was N.J.H.'s father and did not tell him about N.J.H. After Father was established as N.J.H.'s father, DFPS gave Father a family service plan, which included a psychosocial evaluation, individual and group therapy, substance abuse treatment, and parenting classes. And, Father completed all of his services. Huitt also noted that Father had been working for his employer, a restaurant, for almost a year.

Huitt testified that DFPS sought termination of Father's rights based on several concerns. Namely, Father had acknowledged that, despite his having two other children, he had been using marijuana on a daily basis until November 2017 and had been doing so "for a long, long time." On November 9, 2017, Father tested positive for cocaine and "high levels of marijuana." And, he "submitted positive hair follicle tests up until" April 25, 2018. The trial court admitted into evidence lab reports from Father's drug screens and a May 7, 2018 report to the trial court by Child Advocates. One lab report shows that, on November 9, 2017, Father tested positive for cocaine and marijuana. The Child Advocates report shows that Father's drug test result on December 22, 2017 was "dilute negative" and that Father admitted to a DFPS caseworker that he had recently used marijuana. Another lab report shows that, on February 15, 2018, Father again tested positive for marijuana.

Huitt also noted that Father had a 2013 conviction for domestic violence. The trial court admitted into evidence a judgment convicting Father of a 2013 offense of assault causing bodily injury to a family member.

Huitt explained that Father was not allowed to visit N.J.H. until Father tested negative for drugs. Father tested negative on April 25, 2018, and Father visited N.J.H. twice before the May 17, 2018 trial. During his visits, Father interacted well with the child and brought him toys. Huitt noted, however, that Father was providing support for only one of his two other children.

Huitt further testified that N.J.H. had been in his current foster home placement for approximately nine months. He lives there with his siblings, is thriving, and has a "great bond" with his foster parents and siblings.

Etta Pickett, of Child Advocates, Inc., testified that Father's parental rights should be terminated because he had not demonstrated an ability to provide for the physical and emotional needs of N.J.H. Pickett noted that, during his visit with N.J.H., Father was very attentive, and he nurtured and played with N.J.H. However, Pickett noted, Father's drug use was an "ongoing concern."

Father testified that he began a relationship with N.J.H.'s mother in 2015, and, at some point, they began living together at her house. One night in 2016, the child's mother told Father that she was pregnant and ended their relationship. Father moved out that night. Father noted that another man, whom Father thought was the baby's

6

father, immediately moved into the mother's house. Thereafter, Father never had any further contact with the mother. N.J.H. was born in October 2016, but Father did not learn about him until October or November 2017, when DFPS contacted him. Once DNA testing confirmed that N.J.H. was his child, Father attempted to visit and brought him clothing, shoes, and toys.

Father testified that he has been working for a restaurant for about a year. Prior to that, he was working as a bounty hunter. Although Father testified that he has an apartment, he noted that he was homeless two years prior. Father testified that, from January 2016 through November 2017, he was smoking marijuana at least three times per week. However, in November 2017, when DFPS became "involved" in his life, he ceased his use of illegal substances. Father acknowledged that, although he has two other children, one of whom was, at the time of trial, eight years old, he was using marijuana during the pendency of this case. He denied that he had ever used cocaine. He asserted, rather, that he had "purchased a sack [of marijuana] that was laced with cocaine."

Foster mother testified that N.J.H. and his two siblings have been in her home since August 2017 and are thriving. She stated that she and her husband love them and wish to keep them together and raise them.

In its final decree, the trial court terminated Father's parental rights to N.J.H. on the grounds that Father had engaged in conduct, or knowingly placed N.J.H. with

7

persons who had engaged in conduct, that endangered N.J.H.'s physical or emotional well-being and that Father voluntarily and knowingly abandoned N.J.H.'s mother during pregnancy and remained apart from N.J.H. or failed to support him since birth. The trial court appointed DFPS the sole managing conservator of N.J.H.

## Sufficiency of the Evidence

In his first through third issues, Father challenges the legal and factual sufficiency of the evidence to support termination under (1) Family Code section 161.001(b)(1)(E) (endangerment), (2) Family Code section 161.001(b)(1)(H) (abandonment of mother during pregnancy), and (3) Family Code section 161.001(b)(2) (best interest of the child).

### *Standard of Review and Applicable Legal Principles*

A parent's right to the "companionship, care, custody, and management" of his child is a constitutional interest "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 1397 (1982); *see In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). Thus, we strictly scrutinize termination proceedings and strictly construe the involuntary termination statutes in favor of the parent. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). "[T]he rights of natural parents are not absolute," however, and "[t]he rights of parenthood are accorded only to those fit to accept the accompanying responsibilities." *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003). Recognizing that a parent may forfeit his parental rights based

8

on his acts or omissions, the primary focus of a termination suit is protection of the child's best interests. *Id.*

In an action by DFPS to terminate parental rights under Family Code section 161.001, DFPS must establish, by clear-and-convincing evidence, that (1) the parent committed one or more of the enumerated acts or omissions justifying termination and that (2) termination of parental rights is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b)(1), (2). Clear-and-convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007; *In re J.F.C.*, 96 S.W.3d 256, 264 (Tex. 2002). "Only one predicate finding under section [161.001(b)(1)] is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *A.V.*, 113 S.W.3d at 362.

In a legal-sufficiency review in a parental-rights-termination case, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *J.F.C.*, 96 S.W.3d at 266. We assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, disregarding all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.* If, after conducting a review of the record, we determine that no

9

reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then we must conclude that the evidence is legally insufficient. *Id.*

In conducting a factual-sufficiency review in a parental-rights-termination case, we must determine whether, considering the entire record, including evidence both supporting and contradicting the finding, a factfinder reasonably could have formed a firm conviction or belief about the truth of the matter on which DFPS bore the burden of proof. *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). We consider whether the disputed evidence is such that a reasonable factfinder could not have resolved the disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266–67. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (internal quotations omitted).

### Section 161.001(b)(1)(E)—Endangerment

In his first issue, Father contends that the evidence is legally and factually insufficient to support the trial court's termination of his parental rights under Family Code section 161.001(b)(1)(E) (endangerment).

Subsection (E) allows termination when a parent has endangered the child. Specifically, it provides that a trial court may order termination upon a finding, by clear-and-convincing evidence, that a parent:

> engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child[.]

TEX. FAM. CODE ANN. § 161.001(b)(1)(E).

A child is endangered if his environment creates a potential for danger that the parent disregards. *In Interest of J.H.G.*, No. 01-16-01006-CV, 2017 WL 2378141, at *6 (Tex. App.—Houston [1st Dist.] June 1, 2017, pet. denied). Endangerment means to expose to loss or injury, to jeopardize. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.); *see also In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996). Termination under subsection (E) must be based on more than a single act or omission; rather, the statute requires a voluntary, deliberate, and conscious course of conduct by the parent. *J.T.G.*, 121 S.W.3d at 125; *see* TEX. FAM. CODE ANN. § 161.001(b)(1)(E). It is not necessary, however, that the parent's conduct be directed at the child or that the child actually suffer injury. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *J.T.G.*, 121 S.W.3d at 125. The specific danger to the child's well-being may be inferred from parental misconduct standing alone. *Boyd*, 727 S.W.2d at 533; *In re R.W.*, 129 S.W.3d 732, 738 (Tex. App.—Fort Worth 2004, pet. denied).

11

"[A] parent's use of narcotics and its effect on his or her ability to parent may qualify as an endangering course of conduct." *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). Illegal drug use may support termination under section 161.001(b)(1)(E) because "it exposes the child to the possibility that the parent may be impaired or imprisoned." *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App—Houston [1st Dist.] 2009, pet. denied). Because it significantly harms the parenting relationship, drug activity can constitute endangerment even if it transpires outside the child's presence. *See J.O.A.*, 283 S.W.3d at 345; *Walker*, 312 S.W.3d at 617. "[A] parent's decision to engage in illegal drug use during the pendency of a termination suit, when the parent is at risk of losing a child, may support a finding that the parent engaged in conduct that endangered the child's physical or emotional well-being." *In re K.C.F.*, No. 01-13-01078-CV, 2014 WL 2538624, at *10 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (mem. op.).

Here, the evidence shows that Father has a history of drug use that continued during the pendency of this case. *See J.O.A.*, 283 S.W.3d at 345; *In re K.C.F.*, 2014 WL 2538624, at *10. Huitt testified that Father acknowledged to DFPS that, notwithstanding his having other children, he had used marijuana on a daily basis until November 2017 and had been doing so "for a long, long time." Father testified that, from January 2016 to November 2017, he used marijuana three times per week.

DFPS filed its petition against Father on October 13, 2017, and he was ordered to undergo DNA testing on October 17, 2017. After a hearing on November 9, 2017, at which Father appeared with his attorney, the trial court issued an order establishing Father as the father of N.J.H. On that day, Father tested positive for cocaine and marijuana. The Child Advocates report shows that Father's drug test result on December 22, 2017 was "dilute negative" and that Father admitted to a DFPS caseworker that he had recently used marijuana. On February 15, 2018, Father again tested positive for marijuana. Trial was had on May 17, 2018.

From the evidence, the trial court could have reasonably concluded that Father's history of drug use, and continued drug use during the pendency of this case, constituted conduct that endangered N.J.H.'s physical and emotional well-being. *See J.O.A.*, 283 S.W.3d at 345; *Boyd*, 727 S.W.2d at 533 (because it significantly harms parenting relationship, drug activity can constitute endangerment even if it transpires outside child's presence); *Walker*, 312 S.W.3d at 617 (holding that illegal drug use "exposes the child to the possibility that the parent may be impaired or imprisoned"). Knowledge of paternity it is not a prerequisite to a showing of a parental course of conduct that endangers a child under section 161.001(b)(1)(E). *In re J.H.G.*, 2017 WL 2378141, at *6; *In re M.J.M.L.*, 31 S.W.3d 347, 351 (Tex. App.—San Antonio 2000, pet. denied). And, relevant conduct may occur before or after a child's birth. *In re J.H.G.*, 2017 WL 2378141, at *6; *In re*

13

*A.A.M.*, 464 S.W.3d 421, 426 (Tex. App.—Houston [1st Dist.] 2015, no pet.). Although Father denied having intentionally used cocaine, the trial court was entitled to disbelieve his testimony. The trial court, as factfinder, solely determines the credibility of the witnesses and the weight to be given their testimony. *See In re H.R.M.*, 209 S.W.3d 105, 109 (Tex. 2006).

Although Father completed substance abuse treatment and had a single negative drug test on April 25, 2018, "evidence of improved conduct, especially of short-duration, does not conclusively negate the probative value of a long history of . . . irresponsible choices." *In re J.O.A.*, 283 S.W.3d at 346; *In re T.E.G.*, No. 01-14-00051-CV, 2014 WL 1878919, at *7 (Tex. App.—Houston [1st Dist.] May 8, 2014, no pet.) (mem. op.) ("Nor was the trial court required to conclude that P.M. had adequately addressed her drug abuse issues in light of a single negative drug test.").

Furthermore, abusive and violent criminal conduct by a parent can also produce an environment that endangers a child's well-being, and evidence that a person has engaged in such conduct in the past permits an inference that the person will continue violent behavior in the future. *Jordan v. Dossey*, 325 S.W.3d 700, 724 (Tex. App.—Houston [1st Dist.] 2010, pet. denied); *Walker*, 312 S.W.3d at 617; *see also In re J.H.G.*, 2017 WL 2378141, at *6. Here, Father's criminal history includes his commission of an assault causing bodily injury to a family member.

14

After reviewing the evidence in the light most favorable to the trial court's finding, we conclude that a reasonable factfinder could have formed a firm belief or conviction that Father engaged in a course of conduct endangering N.J.H. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E); *In re J.F.C.*, 96 S.W.3d at 266. Further, considering the entire record, including evidence both supporting and contradicting the finding, we conclude that the contrary evidence is not so overwhelming as to undermine the trial court's firm conviction that Father's conduct endangered N.J.H. *See In re J.F.C.*, 96 S.W.3d at 266. We hold that the evidence is legally and factually sufficient to support the trial court's finding.

We overrule Father's first issue.[6]

## *Best Interest of the Child*

In his third issue, Father contends the evidence is legally and factually insufficient to support the trial court's finding that termination of his parental rights was in the best interest of N.J.H.

As a matter of public policy, "the best interest of a child is usually served by maintaining the parent-child relationship." *J.F.C.*, 96 S.W.3d at 294. Despite this

---

[6] Having concluded that the evidence is sufficient to support the trial court's finding under section 161.001(b)(1)(E), and because a finding as to any one of the acts or omissions enumerated in section 161.001(b)(1) is sufficient to support termination, we need not address Father's second issue, in which he challenges the trial court's finding under section 161.001(b)(1)(H). *See In re A.V.*, 113 S.W.3d 355, 363 (Tex. 2003).

15

important relationship, the Texas Supreme Court has held that "protection of the child is paramount" and "the rights of parenthood are accorded only to those fit to accept the accompanying responsibilities." *A.V.*, 113 S.W.3d at 361. Appellate courts examine the entire record to decide what is in the best interest of the child. *In re E.C.R.*, 402 S.W.3d 239, 250 (Tex. 2013). There is a strong presumption that the best interest of a child is served by preserving the parent-child relationship. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006).

In assessing whether termination is in a child's best interest, courts are guided by the non-exclusive list of factors set forth in *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These factors include (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not proper, and (9) any excuse for the acts or omissions of the parent. *Id.* "[T]he State need not prove all of the factors as a condition precedent to parental termination, 'particularly if the evidence was undisputed that the parental relationship endangered the safety of the child.'" *In re*

*C.T.E.*, 95 S.W.3d 462, 466 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) (quoting *In re C.H.*, 89 S.W.3d at 27). Termination of the parent-child relationship is not justified if the evidence shows that a parent's failure to provide a more desirable degree of care or support of the child is due solely to misfortune or the lack of intelligence or training, and not to indifference or malice. *Clark v. Dearen*, 715 S.W.2d 364, 367 (Tex. App—Houston [1st Dist.] 1986), no writ).

For purposes of determining legal sufficiency, we consider those factors that support the finding that termination was in the child's best interest. *Yonko v. Dep't of Family & Protective Servs.*, 196 S.W.3d 236, 243 (Tex. App.—Houston [1st Dist.] 2006, no pet.). If the evidence is legally sufficient, we then balance the factors presented in the legal sufficiency argument against the evidence that undercuts any finding that termination is justified under the statute. *C.T.E.*, 95 S.W.3d at 467. We consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. *J.F.C.*, 96 S.W.3d at 266. If, after considering the entire record, the disputed evidence that weighs against termination is so significant that a factfinder could not reasonable have formed a firm belief or conviction that termination was justified, then the evidence is factually insufficient to support termination. *Id.* A court of appeals should detail in its opinion why it has concluded that a reasonable factfinder could not have credited disputed evidence in favor of termination. *Id.* at 266–67.

17

Here, Father argues that, when all of the evidence is considered in light of the *Holley* factors, "no rational trier of fact could have formed a strong conviction or belief that severing the father-child relationship is in his child's best interest."

With respect to the desires of the child, there is no direct evidence about N.J.H.'s desires because he was less than two years old at the time of trial. *See Holley*, 544 S.W.2d at 371–72. "When children are too young to express their desires, the fact finder may consider that the children have bonded with the foster family, are well-cared for by them, and have spent minimal time with [their] parent." *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.). N.J.H. was ten months old when he was placed with his foster family. At the time of trial, he had lived with his foster parents and siblings for nine months, or nearly half of his life, and his foster mother testified that he had bonded with the family. She further testified that she and her husband love N.J.H. and wish to raise him, along with his siblings, until they reach adulthood. N.J.H. had, at the time of trial, visited with Father twice, for approximately 2 hours. The evidence weighs in favor of the best-interest finding.

Next, evidence of Father's past pattern of drug use is relevant, not only to his parenting abilities and to the stability of the home he would provide, but also to the emotional and physical needs of his child, now and in the future, and to the emotional and physical danger in which the child could be placed, now and in the future. *See*

18

*Holley*, 544 S.W.2d at 371–72 (factors two, three, four, and seven); *see also C.H.*, 89 S.W.3d at 28 (holding that same evidence may be probative of both section 161.001(b)(1) and best-interest grounds); *In re A.C.*, 394 S.W.3d 633, 642 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (finding pattern of illegal drug use suggested mother was not willing and able to provide child with safe environment— a primary consideration in determining child's best interest). A factfinder may afford great weight to the significant factor of drug-related conduct. *In re M.L.G.J.*, 14–14–00800–CV, 2015 WL 1402652, at *4 (Tex. App.—Houston [14th Dist.] Mar. 24, 2015, no pet.) (mem. op.) (considering parent's history of drug use in affirming trial court's determination that termination was in best interest of child). A parent's drug use is a condition indicative of instability in the home environment because it exposes a child to the possibility that the parent may be impaired or imprisoned. *See In re A.M.*, 495 S.W.3d 573, 579 (Tex. App.—Houston [1st Dist.] 2016, pet. denied).

Here, as discussed above, the evidence shows that Father has a history of drug use that continued during the pendency of this case. Father acknowledged to DFPS that he used marijuana on a daily basis until November 2017 and had been doing so "for a long, long time." Father testified at trial that, from January 2016 to November 2017, he had used marijuana three times per week. He tested positive on November 9, 2017 for marijuana and cocaine. On December 22, 2017, he admitted to a DFPS caseworker that he had recently used marijuana. On February 15, 2018, he again

tested positive for marijuana. Again, although Father underwent treatment and had a single negative drug test on April 25, 2018, such did not negate his history of drug use. *See In re J.O.A.*, 283 S.W.3d at 346; *In re T.E.G.*, 2014 WL 1878919, at *7. "A parent's exercise of poor judgment currently and in the past demonstrates an inability to provide adequate care for the child." *In re J.M.*, No. 01-14-00826-CV, 2015 WL 1020316, at *7 (Tex. App.—Houston [1st Dist.] Mar. 5, 2015, no pet.) (mem. op.).

Further, the trial court heard evidence that Father has a history of domestic violence, which is supportive of the trial court's best-interest finding under the third *Holley* factor: the emotional and physical danger to the child now and in the future. *See Holley*, 544 S.W.2d at 371–72; *In re J.I.T.P.*, 99 S.W.3d at 846 (stating domestic violence, even when child is not intended victim, supports finding that termination is in child's best interest).

Conversely, with respect to the foster parents' abilities to parent N.J.H. and to provide a stable home, the evidence shows that N.J.H. is in a safe, stable home and that he is thriving. The trial court heard directly from the foster mother about the family's love for N.J.H. and their desire to raise him through adulthood with his siblings. We defer to the trial court's assessment of the foster mother's credibility and demeanor in crediting this testimony as evidence in favor of the trial court's best-interest finding. *See In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014); *In re*

*S.G.A.R.*, No. 01-18-00291-CV, 2018 WL 4705835, at *7 (Tex. App.—Houston [1st Dist.] Oct. 2, 2018, no pet.).

Father acknowledges in his brief that "N.J.H.'s current placement is safe, stable and protective" and is "taking care of his present physical and emotional needs." He argues only that "there is no guarantee" that N.J.H.'s current placement will continue to be as such because there might be a change in the present caregivers' circumstances and whether N.J.H.'s future needs will be met remains "speculative." However, he directs us to no evidence supporting his argument.

With respect to programs available to assist Father in promoting the child's best interest, the trial court may properly consider whether the parent complied with the court-ordered service plan for reunification with the child. *See In re E.C.R.*, 402 S.W.3d at 249. Father's compliance with certain court-ordered tasks during the termination proceedings weighs in his favor and against the best-interest finding. However, the evidence shows that he was unable to refrain from illegal drug use. And, he asserts only that, "[*p*]*resumably*, [he] would be willing to engage in services were his parental rights restored and he were given a modified [family service plan]." (Emphasis added.)

With respect to plans for the child by the individuals or agency seeking custody, Huitt testified that DFPS's plans is for N.J.H. to remain with his current foster family. Again, foster mother testified that N.J.H. is thriving, is bonded with

21

his foster parents and siblings, and that she and her husband intend to raise him and his siblings through adulthood. *See In re Z.C.*, 280 S.W.3d 470, 476 (Tex. App.—Fort Worth 2009, pet. denied) (stating that stability and permanence are important to upbringing of child and affirming finding that termination was in child's best interest when child was thriving in foster care). When Father was asked his plans for N.J.H., he stated only that he needs more time. And, in his brief, he states only that his "plans are unknown." This factor weighs in favor of the best-interest finding.

Considering the evidence in a light favorable to the trial court's judgment, we conclude that a reasonable factfinder could have formed a firm belief or conviction that termination of Father's parental rights was in N.J.H.'s best interest; we further conclude that the evidence is factually sufficient to support the judgment. *See J.F.C.*, 96 S.W.3d at 266.

Accordingly, we overrule Father's third issue.

## Conclusion

We affirm the trial court's decree.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Brown and Caughey.

Brown, J., concurring.

22