**Opinion issued April 1, 2021**



In The

# Court of Appeals

**For The**

# First District of Texas

―――――――――――――――

## NO. 01-20-00764-CV

―――――――――――――――

## IN THE INTEREST OF N.S.M., A CHILD

―――――――――――――――

**On Appeal from the 314th District Court**
**Harris County, Texas**
**Trial Court Case No. 2019-02994J**

―――――――――――――――

## MEMORANDUM OPINION

This is a parental-termination suit in which the trial court entered a decree terminating a mother's rights as to her daughter. The mother appeals contending that the evidence is factually insufficient to support the trial court's finding that termination of her parental rights is in her daughter's best interest. We affirm.

## BACKGROUND

The Department of Family and Protective Services sought to terminate the mother's parental rights as to her daughter, N.S.M., who was 14 months old at trial. As grounds for termination, the Department relied on Section 161.001(b)(1)(M) of the Family Code, which authorizes termination when a parent has "had his or her parent-child relationship terminated with respect to another child based on a finding that the parent's conduct was in violation of Paragraph (D) or (E)." Paragraph (D) and (E), in turn, concern conditions and conduct that endanger the physical or emotional wellbeing of a child. TEX. FAM. CODE § 161.001(b)(1)(D)–(E).

The case was tried to the bench. The facts were largely undisputed. The Department presented several exhibits and the testimony of three witnesses: the caseworker, the child's guardian ad litem, and the child's current caregiver. Neither the father nor the mother testified. Nor did they offer any evidence.

N.S.M. was born in July 2019. The Department took her into its care three days later because her mother was homeless, and her father was in jail for assaulting her mother during the pregnancy.

The mother has a history of drug use. When N.S.M. was born, she and her mother tested negative for drugs. But the record does not disclose what type of test the hospital administered. When the mother submitted a hair sample for testing nine days after N.S.M.'s birth, the result was positive for cocaine. The mother nonetheless

told the Department she had never used cocaine. When the mother was last drug tested, several months before trial, the result was negative. But on this occasion, she only submitted a urine sample; she did not submit a hair sample.

The mother has a long history with the Department. The Department introduced six prior decrees terminating the mother's parental rights as to her other nine children:

- a July 2009 termination decree as to four children;

- a July 2009 termination decree as to a fifth child;

- a June 2016 termination decree as to a sixth child;

- an August 2016 termination decree as to a seventh child;

- a November 2016 termination decree as an eighth child; and

- an October 2017 termination decree as to a ninth child.

Both July 2009 decrees include findings that the mother had knowingly placed or allowed the children to remain in conditions or surroundings that endangered their physical or emotional wellbeing and engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered their physical or emotional wellbeing. *See* FAM. § 161.001(b)(1)(D)–(E). The November 2016 decree likewise included these same child-endangerment findings. *See id.*

N.S.M.'s mother "has a history of depression and anxiety," which is unmanaged by treatment or medication. She also has a criminal history, including a

3

2015 charge for child abandonment or endangerment, which resulted in 2 years' probation. *See* TEX. PENAL CODE § 22.041(b)–(c).

After N.S.M. came into the Department's care, her mother obtained housing. She has not been homeless since. The mother has maintained regular contact with the Department. She has visited N.S.M. and has behaved appropriately during these visits. But the mother's visits with the child have been infrequent. In the nine months before trial, she visited her daughter on just three or four occasions.

Since April 2020, N.S.M. has lived with a caregiver who has adopted some of her half-siblings. According to the caseworker, N.S.M. loves the caregiver and her siblings. N.S.M. is now walking and playing. The caseworker had no concerns about N.S.M.'s safety in her current placement. The caseworker testified that if the mother's rights are terminated, the caregiver plans to adopt N.S.M. The caseworker opined that termination and adoption was in N.S.M.'s best interest because it would give N.S.M. a permanent, stable home and maintain her relationships with the half-siblings with whom she currently resides as well as her other half-siblings whom her current caregiver ensures she visits.

The mother gave the Department the names of several persons with whom N.S.M. could be placed. But the Department ruled them out on various grounds. A maternal aunt was unsuitable due to her criminal history and history of drug abuse. A friend of the mother was discounted because she had no prior relationship with

the family and had a history with Adult Protective Services. The Department ruled out another ostensible friend of the mother based on her lack of a prior relationship with the family. Finally, another relative identified by the mother did not give the Department the information it needed to evaluate her suitability.

N.S.M.'s guardian ad litem also recommended that the mother's parental rights be terminated. The guardian ad litem testified that she based her recommendation on the mother's "history of previous terminations and lack of stability in her life." With respect to the mother's lack of stability, the guardian ad litem specifically referred to the mother's history of drug abuse and inability or unwillingness to remain employed.

Like the caseworker, the guardian ad litem testified favorably about N.S.M.'s current placement. The guardian ad litem testified that N.S.M. "has a very strong bond with the caregiver and her siblings in the home." N.S.M. is "happy," "very active," and receives lots of attention and affection.

Finally, N.S.M.'s current caregiver testified. She characterized her bond with N.S.M. as "very strong." She testified that she intends to adopt N.S.M. if the mother's parental rights are terminated. In her opinion, termination and adoption are in N.S.M.'s best interest.

The trial court issued a decree terminating the mother's parental rights as to N.S.M. because her parental rights as to other children had been terminated on child-

endangerment grounds and termination was in N.S.M.'s best interest. It also terminated the father's parental rights.

The mother appeals.

## DISCUSSION

The mother does not contest that the previous decrees terminating her parental rights as to her other children on child-endangerment grounds constitute a valid basis for termination of her parental rights in this case. *See* FAM. § 161.001(b)(1)(M). Nor does she contest that the evidence is legally sufficient to show that the termination of her parental rights is in N.S.M.'s best interest. *See id.* § 161.001(b)(2). Instead, the mother contends that the evidence is factually insufficient to show that the termination of her parental rights is in N.S.M.'s best interest. *See id.*

### Legal Standard for Terminating Parental Rights

A parent's rights to the care, custody, and management of his or her child are constitutional in scope. *Santosky v. Kramer*, 455 U.S. 745, 758–59 (1982); *In re M.S.*, 115 S.W.3d 534, 547–48 (Tex. 2003). But parental rights are not absolute; the Department may seek termination of the rights of those who are not fit to accept the responsibilities of parenthood. *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003). The primary focus in a termination suit is protecting the child's best interest. *Id.*

To terminate a parent's rights, the Department must establish that the parent committed one or more statutorily enumerated predicate acts or omissions and that

termination is in the child's best interest. FAM. § 161.001(b)(1)–(2). The Department need only establish one of these predicate acts or omissions in conjunction with the best-interest finding. *See id.*; *In re A.V.*, 113 S.W.3d at 362. Though the two requirements are distinct, evidence that is probative of the parent's acts and omissions may be probative of the child's best interest. *In re M.D.M.*, 579 S.W.3d 744, 769 (Tex. App.—Houston [1st Dist.] 2019, no pet.). The Department must make both showings by clear and convincing evidence, which is "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." FAM. §§ 101.007, 161.001(b).

Because of the constitutional nature of parental rights, the best-interest inquiry begins with a presumption that it is in a child's best interest to be raised by his or her parents. *See In re G.M.*, 596 S.W.2d 846, 846–47 (Tex. 1980). But like any other presumption, this presumption yields to contrary evidence, provided the evidence is clear and convincing. *See id.* at 847; *see also Cervantes-Peterson v. Tex. Dep't of Family & Protective Servs.*, 221 S.W.3d 244, 254 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (en banc) (Department has burden to rebut presumption that child's best interest is served by remaining in parents' custody).

Multiple non-exclusive factors bear on a child's best interest. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include:

- the child's desires;

- the child's physical and emotional needs now and in the future;

- the physical and emotional danger to the child now and in the future;

- the parental abilities of those seeking custody;

- the programs available to assist them to promote the child's best interest;

- their plans for the child of those seeking custody;

- the stability of the home or proposed placement;

- the acts or omissions of the parent that may indicate the existing parent-child relationship is not proper; and

- any excuse for the parent's acts or omissions.

*Id.*; *Yonko v. Dep't of Family & Protective Servs.*, 196 S.W.3d 236, 243 (Tex. App.—Houston [1st Dist.] 2006, no pet.). These factors are not exhaustive, no one factor is controlling, and a single factor may be adequate to support termination on a particular record. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002); *In re J.M.T.*, 519 S.W.3d 258, 268 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). Multiple additional factors may be relevant in assessing a parent's willingness and ability to provide a child with a safe environment in a given case. *See* FAM. § 263.307(b).

### Factual Sufficiency Review in Termination Cases

Because of the elevated burden of proof in a termination suit—clear and convincing evidence—we do not apply the traditional formulation of factual sufficiency on appeal. *In re A.C.*, 560 S.W.3d 624, 630 (Tex. 2018).

In a factual-sufficiency review in a termination case, we must weigh disputed evidence contrary to a finding against all the evidence in its favor. *Id.* at 631. We

consider whether the disputed evidence is such that a reasonable factfinder could not have resolved it in the finding's favor. *Id.* The evidence is factually insufficient if, in light of the entire record, the disputed evidence a reasonable factfinder could not have credited in a finding's favor is so significant that the factfinder could not have formed a firm belief or conviction that the finding is true. *Id.*

In reviewing for factual sufficiency, however, we must be careful not to usurp the factfinder's role. *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014). The factfinder is the sole arbiter of witness credibility. *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009). In a bench trial, the trial judge is the factfinder who weighs the evidence, resolves evidentiary conflicts, and evaluates the demeanor and credibility of witnesses. *In re R.J.*, 579 S.W.3d 97, 117 (Tex. App.—Houston [1st Dist.] 2019, pet. denied). Because the trial judge saw the witnesses firsthand, we must give him or her due deference, notwithstanding the heightened factual-sufficiency standard. *In re J.S.*, 584 S.W.3d 622, 634 (Tex. App.—Houston [1st Dist.] 2019, no pet.).

### Analysis

The mother contends the evidence is factually insufficient to support the trial court's best-interest finding. In support of this contention, the mother argues that the evidence shows she continues to have a bond with her daughter. She further argues that termination is not necessary to keep her daughter in her current placement.

### *N.S.M.'s Desires*

N.S.M. is too young to make her desires known, which ordinarily results in this factor being neutral as to termination. *In re M.A.J.*, 612 S.W.3d 398, 410 (Tex. App.—Houston [1st Dist.] 2020, no pet.). The mother concedes that this is so, but she nonetheless argues that the trial court should have considered the mother-daughter bond in lieu of an expression of N.S.M.'s desires. At multiple points in her brief, the mother asserts that there remains a bond between her and her daughter. But the mother does not cite to any evidence supporting her assertion. She instead argues that the bond is evident from her consistent visitation with her daughter or that the mother-daughter relationship makes the existence of a bond self-evident.

The record, however, does not support the mother's argument. The Department took N.S.M. into its care three days after she was born. At trial, N.S.M. was 14 months old. In the preceding nine months, the mother visited N.S.M. three or four times. The evidence does not show that these visits created a bond between the two or that a bond otherwise existed. So while we agree that evidence of a parent-child bond may substitute for evidence of a child's desires when the child is too young to communicate them, the trial court could have reasonably found that no such bond exists in this instance. *See In re N.J.H.*, 575 S.W.3d 822, 834 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (when child is too young to express desires, factfinder may consider evidence that child has spent minimal time with parent); *In*

*re T.G.R.-M.*, 404 S.W.3d 7, 16 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (factfinder could infer lack of mother-son bond from evidence that mother had not taken care of son who was under the age of two since two months after his birth).

To the extent the mother argues that a parent and child have a natural affinity and a factfinder must give some evidentiary weight to this innate bond, we disagree. The law already accounts for the affinity that usually exists between a parent and child by presuming that continuation of their relationship is in the child's best interest. *See In re V.L.K.*, 24 S.W.3d 338, 341 (Tex. 2000). But evidence of a biological relationship, standing alone, is not proof of a parent-child bond. For purposes of the best-interest inquiry, a parent-child bond exists only if the two have formed a relationship "based on shared feelings, interests, or experiences." *See* NEW OXFORD AMERICAN DICTIONARY 194 (3d ed. 2010) (defining "bond"). Whether such a relationship exists necessarily turns on evidence other than a biological connection. *See, e.g.*, *In re S.C.F.*, 522 S.W.3d 693, 702 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) (reasonable factfinder could decide based on conflicting evidence that father lacked bond with children). To hold otherwise would deprive an alleged parent-child bond of evidentiary value as a proxy for the child's desires.

Thus, this factor remains neutral with respect to N.S.M.'s best interest.

11

### *N.S.M.'s Physical and Emotional Needs and Danger to N.S.M.*

As for the physical and emotional needs of N.S.M. and the physical and emotional danger to N.S.M., the mother concedes that she "could not as of the time of trial provide a safe and stable home for her daughter" and that this "weighs heavily in favor of termination." Because N.S.M. is very young and thus especially vulnerable, the trial court could have reasonably found that the mother's admitted inability to provide a safe and stable home for N.S.M. heavily weighed in favor of termination. *See In re J.M.T.*, 519 S.W.3d at 270–71 (14-month-old's vulnerability weighed in favor of finding that termination was in her best interest).

In addition, as previously discussed, the mother visited N.S.M. three or four times in the nine months before trial. The trial court could have reasonably found that the mother's sporadic and minimal visitation of the child constituted further evidence that the mother is incapable of or unwilling to meet N.S.M.'s physical or emotional needs now and in the future. *See In re R.J.*, 579 S.W.3d at 115 (minimal visitation relevant to multiple *Holley* factors, including child's current and future physical and emotional needs and parent's ability to care for child).

Furthermore, the mother has repeatedly failed to provide a safe and stable home for other children in the past, a circumstance which the trial court could consider in evaluating her ability to meet N.S.M.'s needs. *See In re M.D.M.*, 579 S.W.3d at 770 (factfinder may infer parent's future conduct from past conduct and

12

should consider history of child neglect in best-interest analysis). The mother's parental rights have been terminated with respect to nine other children. As to five of these children, her rights were terminated on child-endangerment grounds. The trial court could have reasonably found that these prior terminations evidenced that the mother cannot meet N.S.M.'s physical or emotional needs now or in the future and that she poses a physical or emotional danger to N.S.M. *See, e.g.*, *In re J.M.G.*, 608 S.W.3d 51, 54–55 (Tex. App.—San Antonio 2020, pet. denied) (considering prior termination decree that included endangerment findings as evidence that termination of parental rights was in best interest of another child).

On this record, these two factors—N.S.M.'s physical or emotional needs and the danger posed to N.S.M.—support the trial court's best-interest finding.

### *Parental Abilities of Those Seeking Custody of N.S.M.*

The mother has a history of depression and anxiety. She has not managed these conditions through treatment or medication. She concedes that she "is unable to protect her children due to her own emotional fragility" and that "mental illness forever may prevent her from effectively parenting," which she further acknowledges "weighs considerably in favor of termination."

Mental illness, in and of itself, is not a ground for the termination of parental rights. *Liu v. Dep't of Family & Protective Servs.*, 273 S.W.3d 785, 791 (Tex. App.—Houston [1st Dist.] 2008, no pet.). But the impact of a parent's mental illness

13

on the ability to parent and the stability of the home are relevant when assessing a child's best interest. *In re R.J.*, 579 S.W.3d at 118. Here, the trial court could have reasonably found that the mother's history of untreated depression and anxiety evidenced that termination is in N.S.M.'s best interest. *See id.* at 119 (best-interest finding supported by evidence that father with history of mental illness was not receiving adequate treatment, potentially subjecting son to uncertainty and instability); *Jordan v. Dossey*, 325 S.W.3d 700, 732 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (evidence that mother failed to take medications prescribed for severe mental illness, did not attend all medical appointments, and discontinued therapy supported finding that termination was in son's best interest).

In addition, the mother has a history of drug abuse, which the trial court was entitled to afford great weight in assessing her parental fitness and N.S.M.'s best interest. *See In re N.J.H.*, 575 S.W.3d at 834 (pattern of drug use relevant to multiple *Holley* factors, including parenting ability, stability of home, child's physical and emotional needs, and physical and emotional danger to child); *In re J.M.T.*, 519 S.W.3d at 269 (parental drug abuse reflects poor judgment and may be factor in deciding child's best interest). Here, the mother's hair tested positive for cocaine within nine days of N.S.M.'s birth, a fact from which the trial court could have reasonably inferred drug use during pregnancy or soon afterward. The trial court could have reasonably further found that either circumstance indicated an inability

14

or unwillingness to properly parent N.S.M. *See In re A.C.*, 394 S.W.3d 633, 642 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (drug use during pregnancy was evidence termination was in child's best interest); *Toliver v. Tex. Dep't of Family & Protective Servs.*, 217 S.W.3d 85, 100 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (mother's drug use took on added significance because child was fragile and needed constant supervision).

Moreover, rather than conceding that she had used cocaine, the mother denied it and said she did not understand how she could have tested positive. Sitting as factfinder, the trial court was entitled to disbelieve the mother's denial. *See Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 618–19 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (rational factfinder could credit positive drug test results over father's testimony denying drug use). Based on the evidence of the mother's history of drug use and the positive drug test result, the trial court could have reasonably inferred that she remains at risk for continuing drug use or relapse. *In re J.M.T.*, 519 S.W.3d at 269. The trial court could have reasonably further found that the mother's apparent lack of candor about her drug use increases this risk. *See Wyatt v. Dep't of Family & Protective Servs.*, 193 S.W.3d 61, 70 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (considering parent's lack of candor as to illegal drug use in best-interest inquiry).

The mother argues that the record contains contrary evidence as to drug use too, and she is correct. The drug test she took in the hospital was negative. In addition, her most recent April 2020 drug test was negative as well.

Given the record as a whole, however, the trial court could have reasonably found the evidence on which the mother relies less persuasive than the evidence of her drug use. The record does not divulge what method of test the hospital administered, and the mother's later negative result was from a urine test. Soon after the unspecified hospital test and well before the urine test, the mother had a hair test with a positive result. It is not uncommon for a person to contemporaneously submit a urine sample that is clean and a hair sample that shows drug use due to the differing timeframe of use that each method of testing is capable of detecting. *See, e.g.*, *In re J.S.*, 584 S.W.3d at 636 (father's urine test results were clean but contemporaneous hair test results showed continued drug use); *In re D.J.W.*, 394 S.W.3d 210, 217 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (mother's urine test was negative at same time her hair test was positive). And while the last drug test the mother took was negative, this single urine test did not negate the uncontradicted evidence that she had a history of drug use. *See In re N.J.H.*, 575 S.W.3d at 835 (father's single negative drug test after treatment for substance abuse did not negate prior history of drug use); *see also In re R.J.*, 579 S.W.3d at 118 (father's nonuse of drugs for extended period and completion of outpatient drug treatment program did not

16

disallow factfinder from inferring he was at risk of continuing substance abuse from evidence of past use).

Finally, the record contains evidence that the mother was charged with abandoning or endangering another child several years ago, which the trial court could have reasonably found indicative of a lack of parental ability. *See Walker*, 312 S.W.3d at 619–20 (prior arrest for child neglect evidenced lack of parental ability). Likewise, we think the repeated termination of the mother's parental rights with respect to multiple other children is indicative of a lack of parental ability.

In contrast, the caseworker testified without contradiction she had no concerns about safety or endangerment with respect to N.S.M.'s current placement. The caseworker also testified that N.S.M.'s half-siblings have lived with N.S.M.'s current caregiver for quite a while without any indication of abuse or neglect.

On this record, this factor—the parental ability of those seeking custody of N.S.M.—supports the trial court's best-interest finding.

### *Plans for N.S.M. and Stability of Home or Proposed Placement*

N.S.M.'s current caregiver intends to adopt her if the mother's parental rights are terminated. It is undisputed that N.S.M. is doing well in her current placement and has developed a strong bond with her caregiver and half-siblings. The trial court could have reasonably considered this evidence in finding that termination is in N.S.M.'s best interest. *See In re N.J.H.*, 575 S.W.3d at 834 (when child is too young

to express desires, factfinder may consider evidence that child has bonded with and is well-cared for by foster family); *Jordan*, 325 S.W.3d at 731 (considering evidence of plan to adopt and stability of placement in best-interest inquiry).

In contrast, the mother has not articulated any specific plans for N.S.M. The mother nonetheless argues that these factors do not support termination because she has demonstrated a "willingness to parent" and the preservation of her "parental rights, arguably, would do little to disrupt or prevent" the continuation of N.S.M.'s current placement. But the trial court could have reasonably discounted the mother's avowed willingness to parent given the evidence of her repeated failure to properly care for multiple children. *See Jordan*, 325 S.W.3d at 731 (discounting mother's stated intent to be good mother because record indicated she lacked ability). Moreover, we reject the mother's argument that the preservation of her parental rights will not disrupt N.S.M.'s current placement because it cannot be reconciled with the mother's concession that a prompt and permanent placement in a safe environment is in her daughter's best interest *See* FAM. § 263.307(a) ("prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest"); *Walker*, 312 S.W.3d at 619 (goal of permanent stable home for child is compelling state interest).

On this record, these two factors—the plans for N.S.M. and the stability of her placement—support the trial court's best-interest finding.

### N.S.M.'s Best Interest

In sum, multiple *Holley* factors support the trial court's best-interest finding, and none of the *Holley* factors contradict or undermine its finding. The evidence is quite one-sided. Considering all the evidence in the record, the disputed evidence that a reasonable factfinder could not have credited in favor of the trial court's best-interest finding is not so significant that the trial court could not have formed a firm belief or conviction that termination of the mother's parental rights is in N.S.M.'s best interest. Thus, we hold that the evidence is factually sufficient to support the trial court's best-interest finding. We overrule the mother's sole issue.

## CONCLUSION

We affirm the trial court's decree terminating the mother's parental rights.

Gordon Goodman
Justice

Panel consists of Chief Justice Radack and Justices Goodman and Farris.