

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-21-00440-CV

**IN THE INTEREST OF E.A.T. JR.** and E.A.T., Minor Children

From the 224th Judicial District Court, Bexar County, Texas
Trial Court No. 2020–PA–01457
Honorable Kimberly Burley, Judge Presiding[1]

Opinion by:     Patricia O. Alvarez, Justice

Sitting:        Patricia O. Alvarez, Justice
                Liza A. Rodriguez, Justice (concurring in the judgment without opinion)
                Lori I. Valenzuela, Justice

Delivered and Filed: April 6, 2022

AFFIRMED

Dad appeals the trial court's order terminating his parental rights to his children E.A.T. Jr. and E.A.T.[2] Dad argues the evidence is legally and factually insufficient to support a finding that terminating Dad's parental rights was in the children's best interests. We affirm the trial court's order.

### BACKGROUND

The Department began this case after receiving a referral regarding alleged drug use and physical abuse. When the Department attempted to remove the children, Dad barricaded himself

---

[1] The Honorable Cathy Stryker is the regular presiding judge for the 224th Judicial District Court of Bexar County.
[2] To protect the minors' identities, we refer to Appellant and the children using aliases. *See* TEX. R. APP. P. 9.8.

indoors with the children. He testified that he was defending his children; Dad stated he did not know the Department was investigating him or that they intended to remove his children.[3]

When Dad started working with a counselor in this case, he engaged with his services and made progress. The counselor in Dad's case worked with him for about one month before placing Dad in residential treatment. According to his counselor, Dad's main problem was his criminal history. The counselor was concerned about Dad's ability to function outside the structure of confinement.

Testimony at trial showed that Dad had extensive criminal history, including domestic violence. Dad also admitted to a history of methamphetamine use.

During Dad's case, he visited with his children, but the visits led to E.A.T. Jr. exhibiting difficult behavior after the visits, such as emotional or mental breakdowns. E.A.T. Jr. was briefly assigned without his sister to a therapeutic placement. At the time of trial, E.A.T. Jr. and E.A.T. were placed together and doing well. But Dad was rearrested and taken into custody pending charges. Dad's caseworker wrote to him there, but Dad did not maintain contact with the caseworker. Dad completed no additional services while in jail.

At the time of trial, Dad's pending charges included possession of methamphetamine, aggravated assault, and violating a protective order. He stated that if he could not take care of his children due to his incarceration, then he preferred his mother to care for the children. She did not attend the trial, but the trial court directed the Department to investigate the feasibility of the children being placed with their grandmother.

---

[3] Because Dad is the only appellant, we recite only those facts that pertain to Dad or the children.

At the conclusion of the trial, the trial court found by clear and convincing evidence that Dad's course of conduct met Family Code section 161.001(b)(1)'s grounds (D), (E), (N), and (O), and that terminating Dad's parental rights was in the best interests of the children. Dad appeals.

### SUFFICIENCY OF THE EVIDENCE AS TO BEST INTERESTS

Dad argues the evidence was legally and factually insufficient to support the trial court's finding that terminating his parental rights was in the children's best interests. *See* TEX. FAM. CODE ANN. § 161.001(b)(2).

The Family Code statutory factors[i] and the *Holley* factors[ii] for the best interest of a child are well known. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *Holley v. Adams*, 544 S.W.2d 367, 371 (Tex. 1976). Applying the applicable standards of review and statutory and common law best interest factors, we examine the evidence pertaining to the best interests of the children.

### A. Evidence of Dad's Course of Conduct

Dad's caseworker testified that Dad had a history of domestic violence. *See In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (propensity for violence may be considered as evidence of endangerment); *accord In re B.J.B.*, 546 S.W.2d 674, 677 (Tex. App.—Texarkana 1977, writ ref'd n.r.e.). He noted that Dad's neighbor reported witnessing domestic violence at the home perpetrated by Dad. *See id.* He also testified to a report that E.A.T. Jr. was injured during a dispute between Mom and Dad. *See id.* Dad's caseworker was concerned that Dad had not fully addressed his domestic violence and anger issues and had not shown a change in his lifestyle or an ability to put his children's needs ahead of his own. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (7), (8), (10), (11); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (G)). The caseworker testified to Mom's report that Dad struck her with a gun and that he also violated her protective order. *See id.*; *accord* TEX. FAM. CODE ANN. § 263.307(b)(7), (8); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (G)). Dad admitted to having anger issues. *See id.*

Dad also admitted to using methamphetamines, stating that he relapsed after the children were removed. *See Interest of N.J.H.*, 575 S.W.3d 822, 834 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) ("Father's past pattern of drug use is relevant, not only to his parenting abilities and to the stability of the home he would provide, but also to the emotional and physical needs of his child, now and in the future, and to the emotional and physical danger in which the child could be placed, now and in the future."); *accord Holley*, 544 S.W.2d at 371–72 (factors (B), (C), (D), (G)). He tested positive for a court-ordered follicle test six months before trial. *See id*. When Dad was subsequently incarcerated, he was unable to complete his residential treatment and other services. *See id*.

At trial, Dad requested more time to gain custody of his children, but the trial court noted that the amount of time the case had been open precluded the possibility of an extension. *See* TEX. FAM. CODE ANN. § 263.307(a); *Holley*, 544 S.W.2d at 372 (factors (B), (D), (E)). Furthermore, Dad's criminal charges in both Bexar County and Wilson County had not been resolved, and he had no scheduled release date. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (2); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (G)). Dad's caseworker testified that Dad had been unable to demonstrate the ability to provide a safe home environment because of his pattern of frequent arrests. *See id*. Dad stated he understood why the frequency and pattern of his arrests was cause for concern. *See id*.

**B.          Evidence on Children's Placements**

After the children were removed from their parents' custody, they were placed in foster care. The CASA advocate and Dad's caseworker testified that E.A.T. Jr. began exhibiting emotional and behavioral issues after visits with Dad. The CASA advocate testified that E.A.T. Jr. appeared sad and unfocused after visits with Dad. Dad's caseworker testified that E.A.T. Jr. was hitting children at school; that he kicked a baby at his foster placement; and that he told his

caregivers that he wanted to hang himself. As a result, E.A.T. Jr. was moved to a specialty placement where he could receive treatment and medication.[4]

The caseworker testified that E.A.T. Jr.'s last visit with Dad occurred a couple of months after E.A.T. Jr.'s behavioral and emotional problems started. According to the caseworker, E.A.T. Jr. eventually left his specialty placement and was reunited with his sister. He started to feel better and stated that he did not believe he needed his medication any longer. He no longer exhibited behavioral issues or talked about harming himself. At the time of trial, E.A.T. Jr.'s caregiver had made a physician's appointment for E.A.T. Jr. to determine if he was ready to stop taking medication.

The caseworker testified that the children were doing well in their placement at the time of trial. *See Holley*, 544 S.W.2d at 372 (factors (B), (F), (G)). They told their caregiver they preferred to stay with her. *See Holley*, 544 S.W.2d at 372 (factor (A)). The CASA advocate testified that the children seemed to feel safe and were being well-taken care of in their current placement. *See Holley*, 544 S.W.2d at 372 (factors (B), (F), (G)). The caseworker testified that the children seemed to love their current placement, and that their caregiver was willing to stay in contact with their grandmother to maintain that family connection. *See Holley*, 544 S.W.2d at 372 (factors (B), (D), (F)). The caseworker also testified that the children no longer mentioned their parents.

## C.         Ad Litem's Recommendations

The children's attorney ad litem recommended Dad's parental rights be terminated. The ad litem attorney noted that the children were in a "great placement." He also cited Dad's standoff with police as a reason for termination.

---

[4] Dad denied that E.A.T. Jr.'s emotional and behavioral issues could have resulted from visits with him because he claimed to be in residential treatment at that time.

**D.**         **Legally, Factually Sufficient Evidence**

Having reviewed the evidence, we conclude the trial court could have "reasonably form[ed] a firm belief or conviction" that it was in the children's best interests for Dad's parental rights to be terminated. *See In re J.L.*, 163 S.W.3d 79, 85 (Tex. 2005); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (citing *In re C.H.*, 89 S.W.3d at 25). The evidence was legally and factually sufficient to support the trial court's best interest of the child findings. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). Dad has not shown otherwise.

We overrule Dad's complaint.

## CONCLUSION

Evidence was legally and factually sufficient to support the trial court's findings by clear and convincing evidence that termination of Dad's parental rights is in their best interests. We affirm the trial court's order.

Patricia O. Alvarez, Justice

---

[i] <u>Statutory Factors for Best Interest of the Child.</u> The Texas legislature codified certain factors courts are to use in determining the best interest of a child:

    (1)     the child's age and physical and mental vulnerabilities;
    (2)     the frequency and nature of out-of-home placements;
    (3)     the magnitude, frequency, and circumstances of the harm to the child;
    (4)     whether the child has been the victim of repeated harm after the initial report and intervention by the department;
    (5)     whether the child is fearful of living in or returning to the child's home;
    (6)     the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home;
    (7)     whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home;
    (8)     whether there is a history of substance abuse by the child's family or others who have access to the child's home;
    (9)     whether the perpetrator of the harm to the child is identified;
    (10)    the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision;
    (11)    the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time;
    (12)    whether the child's family demonstrates adequate parenting skills; . . . and
    (13)    whether an adequate social support system consisting of an extended family and friends is available to the child.

TEX. FAM. CODE ANN. § 263.307(b); *see In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018) (recognizing statutory factors).

[ii] *Holley* Factors.  The Supreme Court of Texas identified several nonexclusive factors to determine the best interest of a child:

(A)    the desires of the child;

(B)    the emotional and physical needs of the child now and in the future;

(C)    the emotional and physical danger to the child now and in the future;

(D)    the parental abilities of the individuals seeking custody;

(E)    the programs available to assist these individuals to promote the best interest of the child;

(F)    the plans for the child by these individuals or by the agency seeking custody;

(G)    the stability of the home or proposed placement;

(H)    the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(I)    any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (footnotes omitted); *accord In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012) (reciting the *Holley* factors).